CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
January 28, 2025
LAURA A. AUSTIN, CLERK
BY: s/A. Beeson
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| Antwon Whitten, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 7:23-cv-00399 |
| | ) | |
| C. Mays *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## **MEMORANDUM OPINION**

Plaintiff Antwon Whitten, an incarcerated inmate at Red Onion State Prison at the times relevant to his complaint, filed this action pursuant to 42 U.S.C. § 1983 against multiple defendants. Whitten complains that his cell was searched and tossed because he had previously complained about prison conditions and that his grievance papers were stolen or discarded during the search. (Compl. at 5–6 (Dkt. 1).) He further claims he was targeted by Defendant Mays, causing him fear and stress. (*Id.* at 6–7.) Two defendants remain in the case (Corrections Officer C. Mays and S[e]rgeant Grubb) after Whitten voluntarily dismissed another defendant, Corrections Officer Gibson. (Dkt. 17.)

This matter comes before the court on Defendants Mays and Grubb's motion for summary judgment. For the reasons that follow, the court will grant the motion.

## I.   Applicable Procedural Requirements

### A. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) ("PLRA"), requires that inmates exhaust available administrative remedies prior to filing civil actions. *Woodford v. Ngo*, 548 U.S. 81 (2006); *Porter v. Nussle*, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."). "[A] court may not excuse a failure to exhaust, even to take [special] circumstances into account" because the PLRA's mandatory exhaustion scheme "foreclos[es] judicial discretion." *Ross v. Blake*, 578 U.S. 632, 639 (2016).

Lack of exhaustion is an affirmative defense that must be asserted a defendant. Once the defendant has made a threshold showing of failure to exhaust, the burden shifts to the plaintiff to show that such administrative remedies were unavailable. *Washington v. Rounds*, 223 F. Supp. 3d 452, 459 (D. Md. 2016) (citing *Graham v. Gentry*, 413 F. App'x 660, 663 (4th Cir. 2011)). Whether an administrative remedy has been exhausted for purposes of the PLRA "is a question of law to be determined by the judge." *Creel v. Hudson*, No. 2:14cv10648, 2017 WL 4004579, at * 3 (S.D. W. Va. 2017) (quoting *Drippe v. Tobelinski*, 604 F.3d 778, 782 (3d Cir. 2010); *see also Woodhouse v. Duncan*, 741 F. App'x 177, 178 (4th Cir. 2018) ("[J]udges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury." (citation omitted)).

### B. VDOC Procedures on Grievances

Virginia Department of Corrections ("VDOC") Operating Procedure ("OP") 866.1, titled "Offender Grievance Procedure," is the mechanism used to resolve most inmate complaints. (Aff. of Tonda Still ¶ 4 (Dkt. 19-1).) The applicable policy is attached to Still's affidavit beginning at Dkt. 19-1 at 8. It applies to "[a]ctions of staff" and to claims of retaliation. (OP 866.1 § III(B)(1)(a)(ii), (iii) (Dkt. 19-1 at 14).) Pursuant to OP 866.1, an inmate must first make a good faith effort to resolve his or her issue informally through the procedures available at the institution. (*Id.* §§ I(D)(1)–(2), VI (Dkt. 19-1 at 11).) If an inmate does not receive a timely response to an informal/written complaint or if the inmate is dissatisfied with the response, the inmate may submit a regular grievance. (*Id.* § III(A)(1) (Dkt. 19-1 at 13).) If the inmate is dissatisfied with the response to a regular grievance, the inmate may appeal. (*See id.* § IV (Dkt. 19-1 at 18).) This is known as a Level I appeal.

The "Facility Unit Head" (the Warden) is generally responsible for providing a Level I appeal response. (*Id.* § III(F)(1) (Dkt. 19-1 at 17).) An inmate dissatisfied with the Level I appeal response may appeal to Level II, where most appeals are reviewed by the Regional Administrator (also referred to as the Regional Ombudsman). (*Id.* § IV(C)(1)(e) at 19); Aff. of Cathy Meade at 2 n.1 (Dkt. 32-1).) The OP designates the following process for an inmate to initiate a Level II appeal:

> If the offender does not agree with the [Level I] grievance response, disposition of the grievance, or the remedy, the offender may submit their appeal by providing the below information in the designated area on the *Offender Grievance Response - Level I*:
> a. Explaining what piece (the response, the disposition, or the remedy) is being appealed
> b. Identifying how the institution's determination does not address the issue

        c. Suggesting a remedy
        d. Signing and dating the appeal section on the *Offender Grievance Response - Level I*

(*Id.* § IV(B)(1) at 18.) An inmate satisfies the requirements for exhausting administrative remedies only when a regular grievance has been accepted and appealed through the highest eligible level of review without a satisfactory resolution of the issue. (*Id.* § V(A–B) at 20.)

VDOC maintains a Grievance File for each inmate. (Dkt. 19-1 ¶ 13.) The Grievance File logs all written/informal complaints, regular grievances that were accepted at intake, and Level I and II appeals. (*Id.*) Whitten's Grievance File is attached to Still's affidavit beginning at Dkt. 19-1 at 25.

The Affidavit of Cathy Meade, the Regional Ombudsman at the Western Regional Office of VDOC, describes the process by which Level II appeals are handled. (Dkt. 32-1 ¶ 19.) She attests that each page of an appeal is stamped with the date of receipt by the Regional Office. (*Id.* ¶¶ 9, 15.) The appeals are not retained as paper copies but are entered into CORIS, the VDOC database. (*Id.* ¶¶ 9, 13.) Nothing in the CORIS system or Whitten's Grievance File or the hard-copy file maintained at Red Onion reflects a Level II appeal from Whitten or any response thereto. (*Id.* ¶ 16.)

## II. Procedural and Factual Background

Whitten submitted several informal/written complaints about the conduct at issue in his suit.[1] On April 10, 2023, he filed a formal Level I grievance that was ultimately processed

---

[1] Whitten submitted four informal/written complaints about the incident (Dkt. 19-1 ¶ 15), and three regular grievances in connection with the incident. (*Id.* ¶ 19.) The three regular grievances were initially each rejected for intake. (*Id.* ¶ 21.) Whitten appealed the intake rejections. (*Id.* ¶ 22.) His appeals led to the overturning of an intake decision for one regular grievance. (*Id.* ¶ 23.) That particular regular grievance was then processed as ROSP-23-REG-00110 and responded to as a Level I appeal by the Warden. (*Id.* ¶¶ 24-25.) Whether or not Whitten appealed that response to Level II is the issue here.

and given grievance number ROSP-23-REG-00110. (Dkt. 25-2 at 6.) That is the particular grievance at issue in this suit.

The Warden signed his Level I response to Whitten's grievance on April 20, 2023. (Dkt. 25-2 at 7.) Whitten received this response to the Level I grievance on April 21, 2023, and thus had five days to submit an appeal to Level II. (Dkt. 19-1 ¶¶ 26, 27.) Whitten claims he mailed his Level II appeal to the Regional Ombudsman on April 22, 2023. (Dkt. 25 at 12.) He further states that after receiving no response, he asked about the status of the response to that appeal by submitting a Facility Request form on June 28, 2023. (Dkt. 19-1 at 46.) The DOC responded, claiming that it had provided to Whitten what was in the file regarding Regular Grievance-00110. (*Id.*) That file did not contain any Level II appeal or a response thereto. (Dkt. 32-1 ¶ 16.)

Whitten's purported Level II appeal document was not submitted at the bottom of the Level I response as is required. (Dkts. 25-2 at 7, 19-1 at 47 (Level 1 response to Whitten's regular grievance; appeal section is blank).) Whitten does not contend that he initiated the Level II appeal by filling out the bottom of the Level I response form. He also does not contend that he was prevented from doing so.

Instead, Whitten claims he functionally appealed by mailing a separate document to the Regional Ombudsman, who was the Level II decision-maker that would have resolved any appeal. Whitten contends that he timely mailed what he intended to be a Level II appeal of the Level I response to the grievance designated ROSP-23-REG-00110 to the Regional Ombudsman. (Dkt. 25 at 12.) He filed a purported copy of that mailing with the court. (Dkt. 25-2 at 1–3.) The document at Dkt. 25-2 at pages 1–3 does not contain any indication of

receipt (such as a date stamp), which Whitten says is because the document he submitted to court was a copy of what he sent to the Regional Ombudsman. (Dkt. 33 at 8.) Neither plaintiff nor defendants produced any evidence of receipt of the mailing purportedly sent to the Regional Ombudsman.[2] Likewise, no party submitted any evidence that the document was destroyed, returned, or intentionally or inadvertently not processed. VDOC simply says it received no such appeal, and that its logs do not indicate an appeal as would be the case if an appeal had been received. Nonetheless, Whitten swears he did timely mail the document at Dkt. 25-2 intending that it be his Level II appeal. (Dkts. 25 at 5, 33 at 9.)

On March 14, 2024, Defendants Mays and Grubb filed a motion for summary judgment (Dkt. 18) and a memorandum in support of the motion (Dkt. 19), seeking dismissal of this action on the ground that Whitten failed to exhaust the administrative remedies that were available to him prior to filing suit. Whitten responded to the motion. (Dkt. 25.) The court requested additional briefing (Dkt. 31), which the parties provided. (Dkts. 32 and 33.)

The disposition of this case turns entirely on resolution of one issue: whether Whitten properly exhausted administrative remedies by filing a Level II appeal of the response to his Level I grievance designated as ROSP-23-REG-00110.

---

[2] According to Whitten, he mailed his intended Level II appeal to the Regional Ombudsman at 5428 Peters Creek Road in Roanoke on April 22, 2023. (Dkt. 25-2 at 3.) He mailed other appeals to the Regional Ombudsman both before and after that date to another address, 3313 Plantation Road, N.E. in Roanoke. Specifically, on March 10, 2023, he mailed an appeal to the Regional Ombudsman at the Plantation Road address. (Dkt. 19-1 at 39–40.) That appeal was received, date-stamped, and processed. (*Id.*; Dkt. 32-1 ¶¶ 22–23.) On July 14, 2023, Whitten mailed an appeal of an unrelated regular grievance arising from a complaint about mail processing to Plantation Road. (Dkt. 32-1 at 29.) It was received, date-stamped, and processed. (*Id.* ¶¶ 26–27.) Whitten reports that Regional Ombudsman's address changed from Peters Creek Road to Plantation Road. (Dkt. 33 at 9.) Whitten obliquely references the possibility of a "wrong mailing address" (*Id.* at 10), but he does not explain anything further on this topic. No party submitted evidence indicating when the address changed or claimed explicitly that the mailing was not received because it had been sent to the wrong address.

### III. Analysis

**A. Standard of Review**

Under Rule 56, summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists only where the record, taken as a whole, could lead a reasonable jury to return a verdict in favor of the nonmoving party. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009). In making that determination, the court must take "the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011).

A party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted). Moreover, "[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247–48. Instead, the non-moving party must produce "significantly probative" evidence from which a reasonable jury could return a verdict in his favor. *Abcor Corp. v. AM Int'l, Inc.*, 916 F.2d 924, 930 (4th Cir. 1990) (quoting *Anderson*, 477 U.S. at 249–50).

**B. Admissibility of Affidavits Supporting the Motion for Summary Judgement**

One of Whitten's primary arguments against Defendants' motion is that the Institutional Ombudsman (Still) and Regional Ombudsman (Meade) who submitted affidavits in support of the summary judgment motion were not the persons in those positions at the time Whitten would have sent the appeal. (*See* Dkt. 33 at 5, 8). Whitten therefore contends

that the affidavits should be rejected as inadmissible hearsay because of the affiants' lack of knowledge. This objection has no merit. The issue is not whether Still and/or Meade personally processed the document or failed to process it, but instead whether the regularly maintained VDOC files contain the document. Still has attested that she is responsible for maintaining the Grievance Files at Red Onion State Prison (Dkt. 19-1 ¶ 1), and Meade has attested that she is the Regional Ombudsman at VDOC's Western Regional Office, with responsibility for receiving and processing Level II Regular Grievance appeals. (Dkt. 32-1 ¶ 1.) "It is well established that employees who are familiar with the record-keeping practices of a business are qualified to speak from personal knowledge that particular documents are admissible business records, and affidavits sworn by such employees constitute appropriate summary judgment evidence." *Nader v. Blair*, 549 F.3d 953, 963 (4th Cir. 2008) (citing Fed. R. Evid. 803(6) and case law). These affidavits are therefore admissible under the business records/public records exceptions at Federal Rule of Evidence 803(6), (7), (8), and (10). *See Mundo-Violante v. Kerry*, 180 F. Supp. 3d 442, 448 (W.D. Va. 2016) (admitting immigration file documents and testimony about the lack of records therein). Further, exceptions to the hearsay rule exist specifically with regard to the non-existence of records. Fed. R. Evid. 803(7) (providing that evidence that a matter is not included in a business record may be admitted to prove that the matter did not occur or exist, so long as "a record was regularly kept for a matter of that kind" and the opponent cannot show a "lack of trustworthiness"); Fed. R. Evid. 803(10) (similar as to public records).

**C. Whitten Failed to Establish Proper and Complete Exhaustion of his Claims**

Turning now to the Whitten's core claim that he exhausted all available administrative remedies, exhaustion must be completed in accordance with the rules of the institution. *See, e.g.*, *Woodford*, 548 U.S. at 90–91 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."). The applicable procedures require that a Level II appeal be initiated by writing on the Level I response, in the space provided, that an appeal is desired. (Dkt. 19-1 at 18–19 (policy).) Procedures that are not compliant with the official policy, even when claimed to be equivalent in effect, do not suffice. *See, e.g., Beatty v. Goord*, 210 F. Supp. 2d 250, 255 (S.D.N.Y. 2000) (rejecting claim that inmate "effectively" exhausted by mailing complaint letters to administrators when policy required submission to a designated Grievance Clerk). It is undisputed that Whitten did not initiate his Level II appeal by following the applicable procedure.

Further, in the absence of any direct evidence indicating receipt or non-receipt of documents or any other evidence as to what happened to a purported mailing, courts apply what is known as a "presumption of regularity." This presumption of regularity attaches to state agency action. *See United States v. Armstrong*, 517 U.S. 456, 464 (1996) ("[I]n the absence of clear evidence to the contrary, courts presume that [government agents] have properly discharged their official duties." (citation omitted)); *United States Postal Serv. v. Gregory*, 534 U.S. 1, 10 (2001) ("[A] presumption of regularity attaches to the actions of Government agencies"). The Fourth Circuit has recognized this presumption to assume proper governmental actions

in the absence of clear evidence to the contrary. *See, e.g.*, *Almy v. Sebelius*, 679 F.3d 297, 309 (4th Cir. 2012); *see also Mira-Avila v. Barr*, 756 F. App'x 329, 331 (4th Cir. 2019). Further, the Fourth Circuit has applied this presumption of regularity to prison records and proceedings. *See Craddock v. Rhodes*, 833 F.2d 1004 (table), No. 87- 7513, 1987 WL 39048, at *1 (4th Cir. Nov. 13, 1987) ("No reason has been given that we should go behind the presumption of regularity which attaches to official records . . . .").

This presumption of regularity would indicate that the grievance appeal at issue would have been mailed if submitted and would have been processed if received. Accordingly, courts have dismissed claims like Whitten's about grievances not being processed absent further proof. *See, e.g*, *Morgan v. FCI Beckley Warden Young*, No. CV 5:23-00101, 2024 WL 3799503, at *8 (S.D.W. Va. June 21, 2024), *report and recommendation adopted sub nom. Morgan v. Young*, No. 5:23-CV-00101, 2024 WL 3796545 (S.D.W. Va. Aug. 13, 2024) ("The BOP's records are subject to the presumption of regularity, there is no record of Plaintiff's fully exhausting any remedy except from Remedy ID No. 992184, and Plaintiff has not submitted competent evidence to overcome this presumption."). One court cited the presumption of regularity to reject an inmate's claim to have filed a grievance and further explained:

> Plaintiff's conclusory arguments in an attempt to create doubt as to NCC's filing system are insufficient evidence of an actual error, manipulation, conspiracy or scheme that caused Plaintiff's grievances to not being filed. *See Cruz v. DeMarco*, No. 12-CV-4277 (JFB) (GRB), 2013 WL 4719086, at *7 (E.D.N.Y. Sept. 3, 2013) ("[A] conclusory claim that a grievance was lost or ignored is insufficient to overcome the PLRA's exhaustion requirement."); *Harris*, 2011 WL 5080089, at *4 (rejecting plaintiff's conclusory argument that the grievance committee "misplaced" his grievance, and finding that "there is no evidence that they took any action to inhibit Plaintiff's exhaustion of remedies.").

*Edwards v. DeStafano*, No. 13CV4345, 2023 WL 6594013, at *7 (E.D.N.Y. July 14, 2023), *report and recommendation adopted sub nom. Edwards v. DeStefano*, No. 13-CV-4345, 2023 WL 6307341 (E.D.N.Y. Sept. 28, 2023).

Further, courts have expressed skepticism generally when considering an inmate's contention that a grievance was lost or destroyed instead of being properly processed. *See, e.g.*, *Johnson v. Green*, No. 1:23CV185, 2024 WL 3905718, at *10 (E.D. Va. Aug. 22, 2024) (rejecting as inadmissible copy of purported submitted grievance after custodian testified that any such grievance would have been date-stamped if it had been received and the purported copy of the grievance produced by the inmate showed irregularities); *Harris v. Loverde*, No. 08-CV-6069, 2011 WL 5080089, at *4 (W.D.N.Y. Oct. 26, 2011) (finding a purported "copy" of a grievance "unreliable" when there was no evidence of receipt and it had not been filed with the complaint in the action).

## IV. Conclusion

Applying the presumption of regularity and considering the undisputed fact that Whitten did not properly submit his appeal according to VDOC procedures leads the court to conclude that Whitten failed to establish that he exhausted his available administrative remedies. Accordingly, the court **GRANTS** Defendants' Motion for Summary Judgment.

The Clerk is **DIRECTED** to mail a copy of this Memorandum Opinion to Whitten.

**ENTERED** this 28th day of January 2025.

/s/ *Jasmine H. Yoon*

HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE